IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| EPCON HOMESTEAD, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| TOWN OF CHAPEL HILL, | ) 1:20CV245 |
| Defendant. | ) ) ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Town of Chapel Hill's Motion to Dismiss [Doc. #9], pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons below, the motion is granted.

I.

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations in the Amended Complaint as true and draw all reasonable inferences in the favor of Plaintiff Epcon Homestead, LLC ("Epcon"). See U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir. 2014). The instant action arises following an $803,250.00 payment Epcon made under the terms of the Inclusionary Zoning Ordinance ("IZO" or "Ordinance") Defendant Town of Chapel Hill (the "Town") adopted in June 2010. (Am. Compl. ¶¶ 11-12 [Doc. # 4]; Ex. A, Am. Compl. ("IZO").) The IZO was adopted as Section 3.10 of the Town's Land Use Management Ordinance ("LUMO") "in order to meet the [T]own's goal of

preserving and promoting a culturally and economically diverse population in [its] community." (IZO at 3.10.)  Under the terms of the IZO, which applied to development projects involving at least five single-family lots, property owners were required to "set aside a certain number of 'affordable housing units,'" which could only be "offered for sale to low-income households at below-market prices." (Am. Compl. ¶¶ 14-15 (internal citations omitted).)  In the alternative, an owner could provide a payment-in-lieu of selling the units at below-market values according to an amount per unit established by the Town, which would be "reserved . . . for affordable housing purposes." (Id. ¶¶ 17-18; IZO at 3.10.2(d)(4).)

In October 2014, Epcon's predecessors in interest[1] submitted a revised Special Use Permit ("SUP"), (Ex. E, Am. Compl.), for the Courtyards at Homestead, a planned development consisting of 63 dwelling units and a clubhouse/pool on 18.2 acres. (Am. Compl. ¶ 40; Staff Report, Ex. D, Am. Compl., at 12 ("Staff Report").)  In the 2014 SUP, pursuant to the IZO, the Town required 15% of the proposed dwelling units to be provided as affordable, which equated to 9.45 of the 63 units. (Am. Compl. ¶ 45.)  After discussions between Epcon's affiliates and the Town, Epcon's affiliates opted instead for the payments-in-lieu at a rate of $85,000.00 per unit, bringing the total amount to $803,250.00, stating that "the

---

[1] Epcon disclaims ownership of the property in question at the time of the 2014 SUP submission but refers to the applicant of the SUP as "[Epcon's] affiliates and their agents" or "predecessors in interest." (Am. Compl. ¶¶ 7, 40, 65.)

2

substantial payment-in lieu would provide much greater opportunity [than setting aside units] for equal or greater units to be built or rehabbed in a more centrally located part of the Town where shopping, public transportation and job[s] [sic] are nearby." (Id. ¶ 46; Staff Report at 14.) The payment-in-lieu was "a condition of the development with periodic payments" due prior to every seventh certificate of occupancy Epcon sought. (Am. Compl. ¶ 52; SUP ¶ 20.) The SUP also provided the stipulation that construction should begin by October 27, 2016 and be completed by October 27, 2019. (Id. ¶ 1.)

Following approval of the SUP, Epcon acquired the real property comprising the project beginning in 2015 and moved forward with developing and selling the 63 units. (Am. Compl. ¶¶ 7, 67.) The property did not have to be rezoned for the project, given that the existing zoning district already allowed for the residential density Courtyards at Homestead required. (Id. ¶ 41.) Epcon made its first payment of $85,000.00 on July 5, 2017 and made further payments of the same amount on September 28, 2017, November 15, 2017, January 31, 2018, April 10, 2018, April 24, 2018, June 22, 2018, September 26, 2018, and October 25, 2018. (Id. ¶¶ 69-77.) A final payment of $38,250.00 was made on March 20, 2019 with the final certificate of occupancy. (Id. ¶ 78.)

After Epcon fulfilled its obligations under the IZO and sold all 63 units in the Courtyards at Homestead, it filed its original Complaint on October 24, 2019 in the Superior Court of Orange County, requesting a return of the $803,250.00 under North Carolina and common law, as well as payment of attorneys' fees. (Compl.,

3

Case 1:20-cv-00245-NCT-JLW   Document 20   Filed 05/26/21   Page 3 of 11

Ex. 1, Pet. for Removal [Doc. #1-1].) The Town moved to dismiss Epcon's Complaint, (Def.'s Mot. to Dismiss, Ex. 2, Pet. for Removal [Doc. #1-2]), and Epcon filed an Amended Complaint adding several state and federal claims, including violations of Substantive Due Process and the Takings Clause pursuant to the Fifth and Fourteenth Amendments of the U.S. Constitution and their counterparts in the North Carolina Constitution. (Am. Compl. ¶¶ 93-98, 110-13.) The Town then removed to this Court, (Pet. for Removal [Doc. #1]), and moved to dismiss the Amended Complaint.

In its Motion, the Town contends that Epcon's state and federal claims are barred by the applicable statute of limitations.[2] (Mot. to Dismiss at 1.) For Epcon's § 1983 claims, the Town argues in its accompanying brief in support that the limitations period began running upon the issuance of the October 2014 SUP and thus expired in October 2017, prior to Epcon initiating this lawsuit. (Br. in Supp. of Def.'s Mot. to Dismiss at 11-13 [Doc. #10].) In the alternative, the Town argues that Epcon failed to exhaust its administrative remedies, depriving this Court of subject-matter jurisdiction pursuant to Rule 12(b)(1) and failed to state a claim that its Constitutional rights were violated pursuant to Rule 12(b)(6). (Mot. to Dismiss at 1-2.) Epcon responds that its state and federal claims were timely given that the statute of limitations were subject to the continuing wrong doctrine and did not

---

[2] The Town moved to dismiss on a number of grounds in addition to the expiration of the statute of limitations. However, because the Motion is granted on the basis of the statute of limitations, the Court did not reach the merits of the other challenges.

begin accruing until it paid the payments-in-lieu beginning in July 2017. Epcon premised this argument in part on the notion that it is only seeking to challenge and recover the payments-in-lieu plus interest rather than to invalidate the IZO. (Pl.'s Br. in Opp. to Def.'s Mot. to Dismiss at 18-19 [Doc. #17] ("Pl.'s Br. in Opp."). But see, e.g., Am. Compl. ¶ 23 ("The Town did not have the legal authority to adopt the [IZO] at the time it was enacted, nor has it acquired the legal authority to enact or enforce such an ordinance since that time."); Pl.'s Br. in Opp. at 3 ("The Town enacted the Ordinance knowing that it was not authorized to do so."); Pl.'s Br. in Opp. at 10 ("Here, the Ordinance is beyond the Town's zoning authority for the same reason.").) The Town replies that the continuing wrong doctrine neither applies to Epcon's claims nor extends the statute of limitations and, as it previously stated, the limitations period began accruing with the SUP rather than the payments-in-lieu. (Reply Br. in Supp. of Def.'s Mot. to Dismiss at 7-9 [Doc. #19].)

II.

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the complaint; importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999) (internal citations omitted). Despite this general rule, dismissal on the grounds that the claim is time-barred may be raised "under 'the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint.'"

5

Tucker v. Specialized Loan Servicing, LLC, 83 F. Supp. 3d 635, 648 (D. Md. 2015) (quoting Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007)); see also Adams v. Crystal City Marriott Hotel, No. 02-CV-10258, 2004 WL 744489, at *2 (S.D.N.Y. Apr. 6, 2004) (citing Bano v. Union Carbide Corp., 361 F.3d 696, 701 (2d Cir. 2004)) ("Rule 12(b)(6) provides the most appropriate legal basis for a motion to dismiss on statute of limitations grounds, because expiration of the statute of limitations presents an affirmative defense."). Accordingly, at the Rule 12(b)(6) stage, "all facts necessary to the affirmative defense [must] 'clearly appear[] on the face of the complaint.'" Goodman, 494 F.3d at 464 (quoting Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993). Thus, if the facts on the face of the complaint do show the claim is time-barred, "the plaintiff fails to state a claim." Tucker, 83 F. Supp. 3d at 648 (citing Jones v. Back, 549 U.S. 199, 214-15 (2007)).

III.

Epcon brings its federal claims under 42 U.S.C. § 1983,[3] which allows for relief for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Section 1983 does not contain a statute of limitations, so "courts borrow the statute of limitations from the most analogous state-law cause

---

[3] While Epcon brought a separate claim of a violation under 42 U.S.C. § 1983 (Count Six), its other federal causes of action alleging violations of the Fifth and Fourteenth Amendments to the United States Constitution (Counts Two and Three) are also analyzed pursuant to § 1983. See, e.g., Scott v. Greenville Cnty., 716 F.2d 1409, 1413 (4th Cir. 1983) (examining alleged invasions of plaintiff's Fifth and Fourteenth Amendment rights under 42 U.S.C. § 1983).

6

of action." Owens v. Baltimore City State's Att'ys Office, 767 F.3d 379, 388 (4th Cir. 2014); see also McDonough v. Smith, 139 S. Ct. 2149, 2155 (2019). In North Carolina, the "analogous state limitations period is the three-years limitations period . . . relating to personal injury actions." Nat'l Advert. Co. v. City of Raleigh, 947 F.2d 1158, 1161-62 (4th Cir. 1991); see N.C. Gen. Stat. § 1-52(5). However, "[a]lthough courts look to state law for the length of the limitations period, the time at which a § 1983 accrues 'is a question of federal law.'" McDonough, 139 S. Ct. at 2155 (quoting Wallace v. Kato, 549 U.S. 384, 388 (2007)); see also Nat'l Advert. Co., 947 F.2d at 1162 (quoting Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975)) ("While the statutory limitations period for § 1983 actions is borrowed from state law, '[t]he time of accrual of a civil rights action is a question of federal law.'").

Under federal law, a § 1983 claim accrues "when a plaintiff knows or has reason to know of the injury that is the basis of the action." Clary v. Strickland, No. 1:13-CV-514, 2014 WL 12495284, at *1 (M.D.N.C. Mar. 18, 2014) (citing Nat'l Advert. Co., 947 F.2d at 1161-62); see also Halle Dev., Inc. v. Anne Arundel Cnty., 121 F. App'x 504, 507 (4th Cir. 2005) (unpublished). At this time, "the plaintiff has 'a complete and present cause of action'" and "could have 'file[d] suit and obtain[ed] relief.'" Tommy Davis Constr., Inc. v. Cape Fear Pub. Util. Auth., 807 F.3d 62, 67 (4th Cir. 2015). For an alleged takings claim violation, this is also the point at which the purportedly offending "ordinance interfere[s] in a clear, concrete fashion with the property's primary use" and "reduce[s]" "the present

7

value" of the property, even if the ordinance has not yet been "enforced against [a party]." Nat'l Advert. Co, 947 F.2d at 1163.

Here, Epcon knew or had reason to know of the IZO's mandates, including the payment-in-lieu alternative, certainly by the time the SUP was issued in October 2014, when it—or its affiliates—agreed to abide by the Ordinance's terms. Though Epcon had not paid the fees and could have opted not to continue the project, it had a complete cause of action at that time because it knew it had been injured by the payment-in-lieu mandate in the amount of $803,250.00. Further, there was no question that the IZO would apply to the Courtyards at Homestead development even before the SUP was issued. A due diligence search prior to the parcels' initial purchase, acquisition, or even a project proposal would have revealed that "practically all new residential developments in the Town's jurisdiction," (Am. Compl. ¶ 14), especially in an area already zoned for high residential density, would be encumbered or similarly impaired by the requirements of the IZO. The Court does not need to reach a conclusion about the exact date of accrual: whether the limitations period began accruing when the SUP was issued in 2014, when Epcon acquired the real property beginning in 2015, or at an earlier date not articulated on the face of the Amended Complaint, the three-year statute of limitations expired prior to Epcon bringing its claims in October 2019.

Epcon maintains, seemingly as an alternative to federal claim accrual, that the "continuing wrong" doctrine applies and the limitations period did not begin accruing until the first payment-in-lieu was made. While federal law governs

8

accrual of a § 1983 claim, state law—here, North Carolina law—governs principles of tolling including the continuing wrong doctrine. See WFC Mgmt. Corp. v. New Hanover Cnty. Airport Auth., 2017 WL 151594, at *4 (E.D.N.C. Jan. 13, 2017) (internal citations omitted) ("In North Carolina, courts will toll the statute of limitations in § 1983 cases when a plaintiff is suffering from a continuing violation of their underlying constitutional right giving rise to the action.") For statute of limitations purposes, "[a] continuing wrong violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." Williams v. Blue Cross Blue Shield of N.C., 357 N.C. 170, 179 (2003) (quoting Ward v. Caulk, 650 F.2d 1144, 1147 (9th Cir. 1981)); see also Nat'l Advert. Co., 947 F.2d at 1166-68; Ocean Acres Ltd. P'ship v. Dare Cnty. Bd. of Health, 808 F.2d 103, 106 (4th Cir. 1983).

Epcon's argument regarding the continuing wrong doctrine fails in part because the "fees" Epcon maintains control accrual are factually distinct from those in the authorities it cites. Both Tommy Davis Constr. Inc., 807 F.3d at 64-65, and Quality Built Homes Inc. v. Town of Carthage, 371 N.C. 60, 61-62 (2018), involve water and sewer impact fees that were exacted pursuant to local ordinances. In Tommy Davis Constr. Inc., the public utility did not even provide the plaintiff with the water and sewer services which the fees purportedly covered. 807 F.3d at 64-65. In Amward Homes, Inc. v. Town of Cary, 206 N.C. App. 38, 41-46 (2010), aff'd, ordered not precedential, 365 N.C. 305 (2011), the defendant required each plaintiff-builder of a subdivision to pay a school impact fee

9

based upon the number of bedrooms in the unit in question to receive a permit, with the permit application and fee payment occurring together, id. at 57. The fee was not originally written into the ordinance at issue but was allowed later as an exemption in an amendment, and the ordinance itself was repealed in part not long after. Id. at 45-47. Here, the IZO provided that a developer could choose to either sell a prescribed number of units at below-market values or provide payments-in-lieu of a roughly equivalent value. In the SUP, Epcon—or its affiliates—opted to make ten payments-in-lieu, totaling $803,250.00, which the Town approved. Epcon made those incremental payments towards the agreed-upon total according to the timeline in the SUP in order to receive certificates of occupancy for its completed homes. These were not separate and distinct fees required by an ordinance; rather, these were partial payments towards a predetermined total that operated as an alternative option under the terms of the IZO. The payments were exactly what the continuing wrong doctrine is not: the "continual ill effects from an original violation" laid out in the SUP. Ward, 650 F.2d at 1147; see also Nat'l Advert. Co., 947 F.2d at 1168 ("This is not an instance of a statute's repeated enforcement against different individuals or even the same parties, but of a statute applied once to a discrete set of individuals with a foreseeable, ascertainable impact.")

Accordingly, the continuing wrong doctrine does not apply and the statute of limitations on Epcon's § 1983 claims has expired.

10

Case 1:20-cv-00245-NCT-JLW Document 20 Filed 05/26/21 Page 10 of 11

IV.

Having dismissed Epcon's federal claims under 42 U.S.C. § 1983 and recognizing that the remaining claims operate under state law principles, the Court declines to exercise jurisdiction over them. 28 U.S.C. § 1367(c)(3); see also Shanaghan v. Cahill, 58 F.3d 106, 109 (4th Cir. 1995) (finding that "federal courts generally have discretion to retain or dismiss state law claims when the federal basis for an action drops away"). The state law claims are dismissed without prejudice to afford Epcon an opportunity to refile its claims in state court within thirty days. 28 U.S.C. § 1367(d); Artis v. District of Columbia, 138 S. Ct. 594, 199 L. Ed. 2d 473 (2018).

V.

For the reasons stated in this Memorandum, IT IS HEREBY ORDERED that the Motion to Dismiss [Doc. #9] by Defendant Town of Chapel Hill is GRANTED IN PART as to the federal claims and DENIED IN PART AS MOOT as to the state claims. IT IS FURTHER ORDERED that the allegations of violations of federal law in Counts Two and Three, as well as the entirety of Count Six alleging violations of 42 U.S.C. § 1983 are DISMISSED WITH PREJUDICE and Counts One, Four, and Seven, and the remaining allegations in Counts Two and Three alleging violations of state law are DISMISSED WITHOUT PREJUDICE.

This the 26th day of May, 2021.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge