**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-1713

EPCON HOMESTEAD, LLC,

          Plaintiff - Appellant,

    v.

TOWN OF CHAPEL HILL,

          Defendant - Appellee.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. N. Carlton Tilley, Jr., Senior District Judge. (1:20-cv-00245-NCT-JLW)

Argued: December 9, 2022                    Decided: March 20, 2023

Before GREGORY, Chief Judge, THACKER, and RUSHING, Circuit Judges.

Affirmed by published opinion. Chief Judge Gregory wrote the opinion, in which Judge Thacker joined, and Judge Rushing wrote a separate opinion concurring in the judgment.

**ARGUED:** Jeffrey Lawrence Roether, MORNINGSTAR LAW GROUP, Durham, North Carolina, for Appellant. Dan M. Hartzog, Jr., HARTZOG LAW GROUP LLP, Raleigh, North Carolina, for Appellee. **ON BRIEF:** William J. Brian, Jr., MORNINGSTAR LAW GROUP, Durham, North Carolina, for Appellant. Katherine M. Barber-Jones, HARTZOG LAW GROUP LLP, Raleigh, North Carolina, for Appellee.

GREGORY, Chief Judge:

This case presents a narrow question: For plaintiffs challenging the constitutionality of a land-use condition, when does their Section 1983 claim accrue? Under Fourth Circuit precedent, a cause of action for a constitutional tort normally vests when the plaintiff knows or has reason to know of the injury. But Epcon Homestead, LLC ("Epcon") believes its case warrants a departure from that standard.

The Town of Chapel Hill, North Carolina (the "Town") requires housing developers seeking a special use permit to set aside a portion of their developments for low-income residents or pay a fee in lieu of that condition. In 2015, Epcon initiated its purchase of property subject to the fee-in-lieu. Epcon paid the requisite fee installments, commenced the development project, and sold each parcel. After Epcon satisfied its final fee installment in March 2019, it brought this lawsuit under a state cause of action to recover the whole sum it had paid to the Town and alleged federal takings and due process violations.

The district court never reached those claims, however, because it determined that Epcon waited too long to pursue them. Given that at least four years had passed between when it first learned of the special use permit condition and when Epcon filed its complaint, the district court dismissed the case under North Carolina's three-year statute of limitations for personal injury claims. Epcon promptly appealed, asking this Court to hold that the statute of limitations on Epcon's federal claims began instead when it paid the fee installments. For the reasons to follow, we decline Epcon's invitation and affirm the district court's ruling.

2

I.

A.

The Town adopted Section 3.10 of its Land Use Management Ordinance ("LUMO") in 2010 "to create and preserve affordable housing opportunities for its residents" and "to provide a structure for cooperative participation by the public and private sectors in the production of affordable housing." LUMO § 3.10; J.A. 87. This "inclusionary zoning" provision requires developers to dedicate a certain percentage of their proposed construction projects to affordable housing units. *Id.* § 3.10.2(a). As an alternative, the Town Council retains the discretion to approve, among other things, the payment of a fee in lieu of the set-aside. *Id.* § 3.10.3(d)(4); J.A. 91. The inclusionary zoning provision applies to any new residential development project that will construct at least five single-family dwellings within the Town's jurisdiction. *Id.* § 3.10.1(a).

The Courtyards of Homestead is a housing development located in the Town comprising sixty-three single-family housing units, bringing it within the inclusionary zoning provision's ambit. In October 2014, before Epcon acquired the property, Epcon's "affiliates"[1] received a special use permit for the Courtyards of Homestead. Rather than abiding by the set-aside requirement, the affiliates agreed to pay the Town a $803,250 fee-in-lieu over several installments. The fee-in-lieu was a condition of the special use permit, without which the project could not be completed. Only after the installments were paid would the Town issue the certificates of occupancy for each development unit.

---

[1] Epcon's First Amended Complaint refers to the former owners of the land as its predecessors in interest and affiliates without further specification. *See* J.A. 73, 77.

3

Following those negotiations, Epcon purchased the property "through several transactions" beginning in 2015. Epcon constructed sixty-three single-family units on residential lots as planned and sold each unit. Epcon also fulfilled its financial obligations, making its first payment in July 2017 and its final payment in March 2019. In return, the Town issued the necessary certificates of occupancy for the finished units.

B.

Once Epcon met its obligations under the special use permit and sold the sixty-three Courtyards of Homestead lots, it filed a civil complaint on October 24, 2019 in North Carolina state court. It initially brought claims under North Carolina statutory and common law to recover the $803,250 it had paid the Town, as well as the reimbursement of attorneys' fees. Epcon then filed an amended complaint adding new claims under state and federal law. It claimed that the Town Council's special use permit condition was ultra vires under North Carolina law and violated the state constitution. Epcon also invoked 28 U.S.C. § 1983, arguing that the fee-in-lieu was an unconstitutional taking under the Fifth Amendment and a due process violation under the Fourteenth Amendment. The Town then removed to federal court and moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).

The district court dismissed the lawsuit because it concluded that the statute of limitations had run on the federal causes of action. Applying a three-year statute of limitations, the court first determined that a § 1983 claim accrues "when a plaintiff knows or has reason to know of the injury that is the basis of the action." J.A. 533 (citation omitted). Then the district court found that "Epcon knew or had reason to know of the [inclusionary zoning provision's] mandates, including the fee-in-lieu alternative, certainly

4

by the time the [special use permit] was issued in October 2014, when it—or its affiliates—agreed to abide by the Ordinance's terms." J.A. 534. Therefore, the court held that "whether the limitations period began accruing . . . when Epcon acquired the real property beginning in 2015, or at an earlier date not articulated on the face of the Amended Complaint, the three-year statute of limitations expired prior to Epcon bringing its claims in October 2019." *Id.* Because the court dismissed the federal claims as time-barred, it declined to exercise supplemental jurisdiction over the state-law claims. Therefore, it dismissed those claims without prejudice to renew in state court.

II.

We review the grant of a motion to dismiss a complaint for failure to state a claim under Rule 12(b)(6) de novo. *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014). Dismissal is proper if the well-pleaded facts of the complaint, taken in the light most favorable to the plaintiff and excluding "unwarranted inferences, unreasonable conclusions, or arguments," fail to state a plausible claim for relief. *Id.* (citations omitted). The Court may also consider documents attached to the complaint or incorporated by reference, including those attached to the motion to dismiss, so long as they are integral to the complaint and authentic, and may take judicial notice of matters of public record. *See id.* Claims may be dismissed at the Rule 12(b)(6) stage based upon an affirmative defense, such as the statute of limitations in this case, where the relevant facts "clearly appear on the face of the complaint." *Briscoe v. W.A. Chester, LLC*,

5

799 F. App'x 183, 183 (4th Cir. 2020) (unpublished) (citing *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)).

III.

A.

There is no dispute that the applicable statute of limitations for Epcon's federal claim is three years. Because § 1983 does not contain a statute of limitations, "courts borrow the statute of limitations from the most analogous state-law cause of action." *Owens v. Balt. City State's Att'y's Off.*, 767 F.3d 379, 388 (4th Cir. 2014); *see also* 42 U.S.C. § 1988(a) (providing that state law acts as a gap-filler where federal statutes are "deficient in the provisions necessary to furnish suitable remedies"). In North Carolina, the "analogous state limitations period is the three-years limitations period . . . relating to personal injury actions." *Nat'l Advert. Co. v. City of Raleigh*, 947 F.2d 1158, 1161–62 (4th Cir. 1991); *see also* N.C. Gen. Stat. § 1-52(5).

Instead, the parties disagree about when the clock on Epcon's § 1983 claim began to tick.[2] If, as the district court decided and the Town endorses on appeal, Epcon's claim accrued when it first learned that its development project would be encumbered by the fee-

---

[2] There is also a question about whether the Court should consider Epcon's alleged injuries under the Takings and Substantive Due Process clauses or just the Takings Clause. Given that both claims stem from the same § 1983 injury, their legal distinctions do not bear on the accrual analysis. The underlying injury—the special use permit condition that Epcon set aside a certain number of affordable housing units or pay a fee-in-lieu—is the same under either theory. *See, e.g.*, *Halle Dev., Inc. v. Anne Arundel Cnty.*, 121 F. App'x 504, 507 (4th Cir. 2005) (unpublished) (considering a Takings Clause and Equal Protection Clause claim as flowing from the same injury for purposes of determining time of accrual).

6

in-lieu condition, then the statute of limitations period was over by the time it filed this lawsuit. However, Epcon challenges this theory. Epcon argues that the statute of limitations did not begin to run until it started making payments because the gravamen of its claim is that those payments commenced the intrusion on its constitutional rights.

"Although courts look to state law for the length of the limitations period, the time at which a § 1983 claim accrues 'is a question of federal law.'" *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). In federal court, it is "the standard rule that the [accrual occurs] when the plaintiff has 'a complete and present cause of action,'" that is, when "the plaintiff can file suit and obtain relief." *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997) (quoting *Rawlings v. Ray*, 312 U.S. 96, 98 (1941)). Put differently, "a plaintiff's cause of action accrues, and the limitations period commences, when the plaintiff knows or has reason to know of his injury (hence, the 'standard rule')." *Owens*, 767 F.3d at 389.

As the Supreme Court has recognized, though, the limitations period on common-law torts may not always begin on the date that a plaintiff knows or has reason to know of his or her injury. *Wallace*, 549 U.S. at 388. Determining when a plaintiff can obtain relief requires identification of "the specific constitutional right alleged to have been infringed." *McDonough*, 139 S. Ct. at 2155 (internal quotations and citations omitted). As such, the Court observed in *Wallace* that the "standard rule" does not always control the start of the limitations period for a § 1983 claim either. 549 U.S. at 388. Instead, *Wallace* instructs that if the common law provides a "distinctive rule" for determining when the limitations period for the analogous common-law tort begins to run, a court must "consider[]" this

7

"refinement" in determining when the limitations period for the plaintiff's claim under § 1983 should commence. *Id.* at 388–89; *see also Owens*, 767 F.3d at 390.

When this Court has considered § 1983 injuries arising from alleged takings, we have not applied the exception recognized by *Wallace*. Rather, we have held that those claims accrued when the plaintiff became aware of the governmental conduct constituting the taking. For example, in *National Advertising Company v. City of Raleigh*, an advertiser challenged a city ordinance requiring an advertiser to bring his existing billboards into compliance or to remove them before the expiration of a five-and-a-half year "grace period." 947 F.2d at 1160–61. We concluded that the advertiser's § 1983 Takings Clause claim accrued when the ordinance was enacted rather than at the conclusion of the grace period because "[i]mmediately upon enactment," the ordinance created "both substantial interference with the property's primary use so as to affect distinct investment-backed expectations and also actual concrete injury accompanying that interference." *Id.* 1163–64.

Then, in *Halle Development, Inc. v. Anne Arundel County*, a developer conveyed land to the county to be used for school facilities, pursuant to an ordinance that entitled developers who made such conveyances to negotiate for land development fee credits. 121 F. App'x 504, 505 (4th Cir. 2005) (unpublished). But the county did not give the developer credits in exchange for the land conveyance. *Id.* When the developer brought a takings claim a decade after the conveyance, this Court held that the statute of limitations had run. *Id.* at 505–06. We determined that when the developer negotiated the deal, it "knew or should have known of this alleged injury when [it] received notice that the County did not intend to provide impact fee credits in exchange for the [] Parcel." *Id.* at 507.

8

The upshot of these decisions is that there is no "distinctive rule" in the Takings Clause context to apply for determining when the limitations period for a § 1983 claim begins to run. And the "standard rule" that a cause of action under § 1983 is "complete and present," *Bay Area Laundry*, 522 U.S. at 201, when the "plaintiff knows or has reason to know of his injury," *Owens*, 767 F.3d at 389, applies to Epcon's claims. In both cases, the Court concluded that the claim accrued when the government performed conduct causing the injury, thereby notifying the plaintiff of its injury. In *National Advertising*, that notice flowed from the enactment of the use ordinance because it immediately affected the advertiser's existing use of its property. In *Halle*, the developer received notice when it conveyed the land because that transaction effected clear notice to the developer that it would not receive impact fee credits as part of the deal.

Here, Epcon alleges that it suffered an injury under § 1983 stemming from the application of an unlawful special use permit condition. As the district court concluded, Epcon first had reason to know of this injury no later than 2015, when it began purchasing the land subject to the special use permit. Thus, its claim that the permit condition violated its rights to just compensation and due process accrued at that point and extinguished three years later.[3] By the time Epcon filed suit in October 2019, the sun had set on its federal claims.

---

[3] Epcon cites *Tommy Davis Construction, Inc. v. Cape Fear Public Utility Authority*, to argue that its constitutional claims accrued when it paid the fee installments. 807 F.3d 62, 66–67 (4th Cir. 2015) (concluding that the statute of limitations on the construction company's due process claim stemming from fees it paid for sewage service it never used began when it "paid the impact fees under protest"). The construction company in *Tommy* (Continued)

B.

1.

Resisting this conclusion, Epcon maintains that it "suffered no taking or deprivation of any property interest until it was compelled to pay the challenged fees to the Town beginning in 2017 as a condition of the Town issuing certificates of occupancy for the Project." Opening Br. at 10. It emphasizes that "[a]t any time prior to that date, Epcon could have sold the Property, requested a rezoning of the Property to pursue a non-residential use, [or] redesigned the Project in a way that did not implicate the Ordinance's requirements." *Id.* Thus, given that "Epcon does not allege a regulatory taking" and instead "alleges an unlawful exaction that could not occur unless and until Epcon changed the use of the property," it argues that the claim did not accrue when the special use permit was issued. Reply Br. at 6.

The distinction Epcon attempts to draw between exactions and regulatory takings proves little more than that the government need not physically appropriate property to enact a taking. Once the government conditions the grant of a land-use permit on the surrender of a landowner's right to just compensation, a Takings Clause claim becomes cognizable. *See Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606 (2013) (stating that the principles of takings case law "do not change depending on whether the

---

*Davis* did not challenge the ordinance requiring payment for water sewage service, but instead challenged the application of that law to the company for a service it did not use. *Id.* at 65. By contrast, Epcon's legal theory is that the fees it paid were unlawful because the special use permit condition (as negotiated by its affiliates) *itself* is unconstitutional. So, *Tommy Davis* does not alter our conclusion on this score.

10

government *approves* a permit on the condition that the applicant turn over property or *denies* a permit because the applicant refuses to do so"); *accord Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2177 (2019) (noting that a taking "is complete at the time of the taking"); *Pakdel v. City & Cnty. of San Francisco, Cal.*, 141 S. Ct. 2226, 2230 (2021) (holding that a taking is final when "there [is] no question . . . about how the 'regulations at issue apply to the particular land in question'") (quoting *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 739 (1997)). The fact that the special use permit did not *require* and simply *permitted* Epcon to develop the land for the use described in the application (subject to the condition at issue) is hardly noteworthy—permitting a particular use is an essential feature of any permit. Thus, when Epcon learned of the special use permit condition on its recently acquired land, its takings claim became actionable.

2.

Likewise, Epcon's argument that each payment constituted a "continuing wrong" that tolled the statute of limitations is unpersuasive. State rules on tolling apply when a state statute of limitations is borrowed in a federal question case. *See Wade v. Danek Med., Inc.*, 182 F.3d 281, 289 (4th Cir. 1999). In North Carolina, the "continuing wrong doctrine" extends the limitations period until "the violative act ceases." *Williams v. Blue Cross Blue Shield of N.C.*, 581 S.E.2d 415, 423 (N.C. 2003). In other words, "the applicable limitations period starts anew in the event that an allegedly unlawful act is repeated." *Quality Built Homes, Inc. v. Town of Carthage*, 813 S.E.2d 218, 226 (N.C. 2018). Epcon argues that *Quality Built Homes*, compels the Court to apply the continuing wrong doctrine here. We disagree.

11

In *Quality Built Homes*, the North Carolina Supreme Court considered whether the Town of Carthage had the authority to enact and enforce portions of a water impact fee collection ordinance. *Id.* at 221. Thus, "[t]he essence of plaintiffs' claim against the Town [was] that the Town ha[d] exacted unlawful impact fee payments from them." *Id.* at 227. Even though "the [p]laintiffs, in [that] case, who [were] in the business of developing property, knew at the moment the Ordinances were passed, that they would be subject to the Ordinances' requirement of the payment of water and sewer impact fees," *id.* at 222, the court rejected the town's argument that the continuing wrong doctrine did not apply because the "plaintiffs did not sustain any direct injury at the time that the challenged impact fee ordinances were adopted[,]" *id.* at 227. As a result, "since plaintiffs' injury occurred when plaintiffs made the required impact fee payments to the Town," the court concluded that "Quality Built Homes' claims against the Town accrued" each time it paid an impact fee. *Id.*

In relying on *Quality Built Homes*, Epcon conflates the nature of its state and federal law claims.[4] While the essence of Epcon's state return-of-fees claim is arguably the

---

[4] For the same reason, *Bill Clark Homes of Raleigh, LLC v. Town of Fuquay-Varina*, 869 S.E.2d 1 (N.C. Ct. App. 2021), which Epcon cited as additional support for its position, is distinguishable. Like *Quality Built Homes*, the nature of the claim "was, when viewed realistically, one resting upon an alleged statutory violation that resulted in the exaction of an unlawful payment." *Id.* at 5 (internal quotations and citation omitted). The *Bill Clark Homes* court was "unable to distinguish the nature of the claim" in its own case from that of *Quality Built Homes*, so the same statute of limitations applied. *Id.*; *see also id.* ("Of particular relevance here, our Supreme Court reasoned that it was 'unable to conclude that the one-year statute[s] of limitations set out in N.C.G.S. §§ 160A-364.1 and 1-54(10)' applied because the plaintiffs' claims did 'not rest upon *a challenge to the validity of the Town's zoning or unified development ordinances*.'" (emphasis in original) (quoting *Quality Built Homes*, 813 S.E.2d at 228 n.7)).

12

unlawful fee payments exacted, its § 1983 injury was inflicted by the special use permit condition requiring Epcon to set aside part of its property or pay the fee-in-lieu. Hence, any violation of Epcon's constitutional rights by the Town would have occurred prior to when Epcon actually paid the fee installments. As the district court put it, "[t]he payments were exactly what the continuing wrong doctrine is not: the continual ill effects from an original violation laid out in the [special use permit]." J.A. 536 (cleaned up).

IV.

Because Epcon bought the property subject to the special use condition more than three years before it finally filed this lawsuit, its federal claims are barred by the statute of limitations. Accordingly, we affirm the district court's dismissal of those claims. Having disposed of Epcon's federal claims, we also affirm the district court's decision to decline supplemental jurisdiction over Epcon's state-law claims.

*AFFIRMED*

13

RUSHING, Circuit Judge, concurring in the judgment:

Epcon's 28 U.S.C. § 1983 claim is barred by the three-year statute of limitations, *see Nat'l Advert. Co. v. City of Raleigh*, 947 F.2d 1158, 1161–1162 (4th Cir. 1991); N.C. Gen. Stat. § 1-52(5), because its cause of action accrued by 2015. Under common-law principles, "it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (internal quotation marks, citations, and brackets omitted); *see Smith v. Travelpiece*, 31 F.4th 878, 883 n.4 (4th Cir. 2022) (contrasting a discovery rule of accrual).†

Epcon complains that the Town allegedly imposed an unconstitutional condition on its special use permit. *See Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 607 (2013). Applying the standard rule, Epcon's takings claim and related substantive due process claim accrued by 2015, when Epcon first purchased land subject to that permit condition. *See id.* (unconstitutional conditions do not "take property" but rather "impermissibly burden the right not to have property taken without just compensation"); *see also id.* at 613 ("[T]he monetary obligation burden[s] [the plaintiff's] ownership of a specific parcel of land.").

---

† In the analogous common-law context of trespass, a claim accrued "at 'the time [the trespass] was committed, and not from the time when the full extent of the injury was ascertained.'" *Smith*, 31 F.4th at 887 (quoting H.G. Wood, *A Treatise on the Limitation of Actions at Law and in Equity* 422 (John M. Gould ed., 3d ed. 1901)); *see* Robert Brauneis, *The First Constitutional Tort: The Remedial Revolution in Nineteenth-Century State Just Compensation Law*, 52 Vand. L. Rev. 57, 63, 67–71 (1999) (explaining the history of takings claims being asserted as trespass actions).

14

The continuing-wrong doctrine does not help Epcon. As an initial matter, the doctrine appears to be one of accrual, not tolling, so federal law controls. *See*, *e.g.*, *Quality Built Homes Inc. v. Town of Carthage*, 813 S.E.2d 218, 226 (N.C. 2018) (explaining that "the 'continuing wrong' doctrine" determines when a claim "accrued" because it "does nothing more than provide that the applicable limitations period starts anew in the event that an allegedly unlawful act is repeated"). Under federal law, "[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Nat'l Advert. Co.*, 947 F.2d at 1166 (internal quotation marks omitted). Thus, if the alleged constitutional violation occurs "in a series of separate acts and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation . . . ." *Id.* at 1167 (internal quotation marks omitted). Epcon's federal claims allege the Town imposed an unconstitutional condition on its permit—a single act. Epcon's payments pursuant to that permit were not repeated constitutional violations but rather continual ill effects of the original violation alleged. I therefore concur in the Court's judgment affirming the district court's dismissal of Epcon's federal claims.